**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew Karon and Brenda Marshal,<br><br>Plaintiffs,<br><br>v.<br><br>Safeco Insurance Company of America,<br><br>Defendant. | No. CV-20-01522-PHX-DJH<br><br>**ORDER** |

Pending before the Court is Defendant Safeco Insurance Company of America's ("Safeco") Motion for Summary Judgment. (Doc. 18). Plaintiffs filed a Response (Doc. 21), and Defendant filed a Reply (Doc. 24). The matter is fully briefed.[1] The Court now issues its ruling.

**I.   Background**

This is an insurance coverage dispute for water damage to a home owned by Plaintiffs in Sun City West, Arizona (the "Property"). (Doc. 1 at ¶ 4). Safeco insured the Property under a homeowner's insurance policy (the "Policy") for the period of January 25, 2019 to January 25, 2020. (Docs. 1 at ¶ 5; 18-3 at 11).

Damage to the Property occurred in September 2019. (Doc. 1 at ¶ 17). Plaintiffs were not present since they primarily reside in Minnesota and use the Property as a secondary home during the winter months. (Docs. 21 at 2; 1 at ¶ 16). Plaintiffs suspected

---

[1] Both parties requested oral argument in this matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court denies the parties' requests. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

a problem when their water bill for September 10, 2019 to October 8, 2019 indicated 32,000 gallons of water usage. (Doc. 21 at 2). When they asked their neighbors to check on the Property, their neighbors informed them there was water flowing out of the back of the home. (*Id.*) The Property had incurred "extensive water damage" (the "Loss"). (Doc. 1 at ¶ 21). On October 23, 2019, Plaintiffs reported the Loss to Safeco. (*Id.* at ¶ 24). Safeco denied coverage the next day, stating that Plaintiffs' "policy does not afford coverage for continuous repeated seepage and leakage." (*Id.* at ¶ 25).

The Policy covers "accidental direct physical loss to property . . . except as limited or excluded." (Doc. 18-3 at 14). The Policy does not cover certain types of water damage. (Doc. 18-3 at 14–16). The pertinent exclusionary clause states as follows:

> BUILDING PROPERTY LOSSES WE DO NOT COVER
>
> We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area;
>
> . . .
>
> 5. continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of **weeks**, months or years. ["Section 5"]

(*Id.*) (emphasis added).

After Safeco denied coverage citing this provision, Plaintiffs' counsel sent Safeco a letter on April 13, 2020, asking Safeco to reconsider its decision. (Doc. 1 at ¶ 45). The letter stated that "the refrigerator water line was discharging approximately 1,000 gallons of water per day into the home for a period exceeding two weeks," but that the Loss was not subject to Policy exclusions because Plaintiffs were only seeking coverage for damages that occurred in the first 13 days. (*Id.* at ¶¶ 37, 41). Safeco declined to reconsider its decision. (*Id.* at ¶ 46).

Plaintiffs bring two causes of action against Safeco. They seek damages for breach of contract and a declaratory judgment that "damages due to water losses occurring within the first thirteen (13) days are not excluded pursuant to the Policy." (*Id.* at ¶ 55). Safeco's

fourth affirmative defense is that the Loss is excluded from coverage under Section 5. (Doc. 18 at 1). Safeco seeks summary judgment on both of Plaintiffs' claims and on its fourth affirmative defense. (*Id.* at 1–2).

## II.     Summary Judgment Standards

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The materiality requirement means "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of identifying the portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party meets its initial burden, the opposing party must establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence." *Hunton v. Am. Zurich Ins*. Co., 2018 WL 1182552, at *1 (D. Ariz. Mar. 7, 2018) (citing *Anderson*, 477 U.S. at 248). "[T]he non-moving party's evidence is to be taken as true and all inferences are to be drawn in the light most favorable to the non-moving party." *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 255).

## III.    Breach of Contract

Count II of Plaintiffs' Complaint is based on Safeco's alleged breach of contract for failure to pay policy benefits. Safeco argues Plaintiffs' Loss is precluded from coverage

under the Section 5 policy exclusion. (Doc. 18 at 2). Plaintiffs contest this interpretation and argue that even if it were interpreted in the way Defendant proposes, the Court should deny summary judgment under the reasonable expectations doctrine. (Doc. 21 at 11).

    **a. Contract Interpretation**

Insurance contract interpretation is a question of law. *Thomas v. Liberty Mut. Ins. Co.*, 842 P.2d 1335, 1337 (Ariz. Ct. App. 1992) (citing *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982)). "[W]here the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyound [sic] its plain and ordinary meaning or add something to the contract which the parties have not put there." *D.M.A.F.B. Fed. Credit Union v. Emps. Mut. Liab. Ins. Co. of Wis.*, 396 P.2d 20, 23 (Ariz. 1964) (citing *A. J. Bayless Mkts. v. Ohio Cas. Ins. Co.*, 104 P.2d 145 (Ariz. 1940)). Furthermore, "[t]he language used in an insurance contract must be viewed from the standpoint of the average layman who is untrained in the law or the field of insurance." *Liristis v. Am. Fam. Mut. Ins. Co.*, 61 P.3d 22, 25–26 (Ariz. Ct. App. 2002). "Where the policy language is clear, a court may not take 'the easy way out' by inventing ambiguity, and then resolving it to find coverage where none exists under the policy . . . [A] 'court should not attempt to revise the policy to increase the risk or extend liability just to accomplish a so-called good purpose.'" *Id.* (quoting *Sec. Ins. Co. of Hartford v. Andersen*, 763 P.2d 246, 248 (Ariz. 1988)).

However, "[i]f an insurance policy is subject to different interpretations," the court determines the meaning of the term by examining "the specific language of the provisions, any applicable public policy considerations, and the purpose of the transaction as a whole." *Liristis*, 61 P.3d at 26 (citing *State Farm Mut. Auto. Ins. Co. v. Wilson*, 782 P.2d 727, 733 (Ariz. 1989)). If ambiguity remains, *only then* does a court construct the ambiguity "in favor of the insured and coverage, and against the insurer." *Roberts v. State Farm Fire & Cas. Co.*, 705 P.2d 1335, 1336–37 (Ariz. 1985) (citing *State Farm Mut. Auto. Ins. Co. v. Paynter*, 593 P.2d 948, 954 (Ariz. Ct. App. 1979)). This rule applies "with even greater

force where the ambiguity appears in an exclusionary clause." *Id.* at 1337 (citing *State Farm Mut. Auto. Ins. Co.*, 593 P.2d at 954).

### b. Section 5

The parties' dispute centers on Section 5 of the Policy. Safeco argues Section 5's language is clear, unambiguous, and excludes Plaintiffs' claim for damages resulting in the first 13 days of the Loss. (Doc. 18 at 7). In response, Plaintiffs argue the Section 5 exclusion does not apply for two reasons. (Doc. 21 at 6).

Plaintiff's first argue that Section 5 does not apply because the Loss was not caused by seepage or leakage, it was caused by a broken water line. (*Id.*) They argue the ordinary meaning of "seepage or leakage" does not encompass a "ruptured water line dispensing 1,000 gallons of water per day." (*Id.*) The Court finds that, given the ordinary meanings of seepage and leakage, Plaintiffs' first argument fails. Seepage is defined as "percolation or oozing of water or fluid," "a process in which a liquid flows slowly out of a hole or through something," or the course of passing or flowing "slowly through fine pores or small openings." *Landrum v. Allstate Ins. Co.*, 2019 WL 5068656, at *3 (M.D. Ga. Oct. 9, 2019) (internal citations omitted). Leakage is defined as an "admission or escape of water or other fluid through a hole in a vessel, etc.," "escap[ing] from a hole or crack in a pipe or container," or "enter[ing] or escap[ing] through an opening usually by a fault or mistake." *Id.* (internal citations omitted). Therefore, the Court is unpersuaded by Plaintiffs' argument that the terms seepage and leakage do not encompass a ruptured water line because "the Policy's exclusion of both seepage, which in some definitions includes a speed component, and leakage, which does not include a speed component, clearly indicates the intention to exclude any escape of water, including that which is slow-moving and that which is not." *Id.*; *see also Danganan v. Am. Fam. Mut. Ins. Co.*, 2019 WL 4855140, at *4 (D. Nev. Sept. 30, 2019) (rejecting "gradual or low volume water event" as a definition of "leakage" "because dictionary definitions of the term refer to fluid being released but not necessarily to the volume of the release").

Second, Plaintiffs argue Section 5 does not apply because Plaintiffs seek coverage

for only the first 13 days of the Loss, not for coverage sustained "over a period of weeks." (Doc. 21 at 6). As their claim is for 13 days, Plaintiffs argue Section 5 does not apply essentially because weeks, as used in Section 5, is at least 14 days. (Doc. 21 at 7). But the Court does not find that this interpretation accords with Section 5's plain and ordinary meaning.

Section 5 excludes losses caused by "continuous or repeated seepage or leakage of water or stream, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years." The operative term here is "over," whereby Section 5 excludes claims for damage occurring "*over* a period of weeks," not damage occurring "*after* a period of weeks."  The Court finds "over" cannot be read as synonymous with "after" in this context because the language describes "continuous" seepage, that is, the damage must be viewed as a whole, not in discrete parts.  The Court also notes that if it were to read "over" as synonymous with "after," then it would be unclear what period of time is covered, whether it be "weeks, months, or years."  No such ambiguity results when interpreting Section 5 to mean that continuous seepage occurring *over* weeks, months, or years shall be excluded from coverage.  In other words, Section 5 unambiguously excludes the short-term damage Plaintiffs claim is covered.

Plaintiffs cite two out-of-state cases to support their interpretation of Section 5. (Doc. 21 at 7–9). First, they cite *Wheeler v. Allstate Insurance Co.*, where water damage to a flooded cabin was found approximately two months after the flooding began. 687 F. App'x 757, 759 (10th Cir. 2017). The cabin's insurance policy stated "[w]e do not cover loss to the property . . . consisting or caused by the following: . . . [s]eepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel." *Id.* The court construed the exclusionary clause to mean that "damage *not* 'caused by' weeks or months of leakage—or, to phrase it differently, damage 'caused by' *less than* weeks of leakage—is *not* excluded." *Id.* at 766 (emphasis in original). The court found summary judgment inappropriate because the exclusion did not "clearly and unmistakably apply to the damage caused by less than 14 days of leakage" and because "a

- 6 -

reasonable jury could find that short- and long-term damages are, in fact, separable." *Id.* at 766, 773.

The Court is not persuaded because the lead-in clause in *Wheeler* is meaningfully different than the lead-in clause here. The lead-in clause in *Wheeler* stated "[w]e do not cover loss to the property . . . consisting or caused by the following: . . . " 687 F. App'x at 759.  Here, the clause states "[we] do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." Unlike the lead-in clause in *Wheeler*, the clause here excludes otherwise covered risks, like water damage occurring within the first 13 days, that contribute to the overall loss. *See T.H.E. Ins. Co. v. Charles Boyer Children's Tr.*, 455 F. Supp. 2d 284, 291 (M.D. Pa. 2006) (where lead-in clause stated "[w]e will not pay for loss or damage caused directly or indirectly by any of the following [enumerated exclusions]. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss," the degree to which an excluded factor, i.e., water, contributed to the damage was irrelevant).

Plaintiffs next cite *Hicks v. American Integrity Insurance*, in which a refrigerator supply line discharged almost 1,000 gallons of water per day for at least five weeks. 241 So.3d 925, 926 (Fla. Dist. Ct. App. 2018). There, the policy excluded coverage for "[c]onstant or repeated seepage or leakage of water . . . over a period of 14 or more days." *Id.* The court found that it was not "unambiguously clear that a provision excluding losses <u>caused by</u> constant leakage of water over a period of fourteen or more days likewise excludes losses <u>caused by</u> constant leakage of water over a period of <u>less than</u> fourteen days." *Id.* at 927 (emphasis in original). Because it found the clause ambiguous, the court defaulted to construing the clause "against the insurer and in favor of coverage." *Id.* (citing *Wash. Nat'l. Ins. v. Ruderman*, 117 So.3d 943, 950 (Fla. 2013)).

*Hicks*, as non-binding authority, fails to persuade the Court of Plaintiff's position. The Court is more persuaded by *General Star Indemnity Co. v. Sherry Brooke Revocable Trust*, where damage to several apartment complexes was caused by plumbing leaks that

endured for months. 243 F. Supp. 2d 605, 608 (W.D. Texas 2001). There, the policy provided: "[w]e will not pay for loss or damage caused by or resulting from any of the following: . . . Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more." 243 F. Supp. 2d at 609. The court found that the exclusion "means what it says" and that it unmistakably and unambiguously applied to the damage. *Id.* at 611. Likewise, the Court here finds that Section 5's language means what it says.

The Court recognizes that neither the Arizona Supreme Court nor the appellate courts have interpreted Section 5's language or language to that effect. However, Safeco does cite an Arizona trial court Under Advisement Ruling that interpreted language nearly identical to Section 5, which found that such language is unambiguous and upheld the insurance company's decision to deny coverage. (Doc. 18 at 9) (citing *Henderson v. Liberty Mut. Ins.*, CV 2016-013516). In that case, *Henderson v. Liberty Mutual Insurance*, the duration of water damage to the home is unclear, but the exclusion in the homeowner's policy stated, "we do not insure, however for loss . . . [c]aused by . . . [a]ny of the following: . . . seepage." (Doc. 18-4 at 2). The clause excluded damage caused by "gradual, continuous, or repeated seepage or leakage of water, steam or fuel over a period of 14 days or more, resulting in damage to the structure, whether hidden or not." (Doc. 18-4 at 3). The court decided the exclusion was not ambiguous and that it operated to preclude coverage. (Doc. 18-4 at 5). It ruled that the plaintiff's breach of contract claim based on the exclusion failed as a matter of law. (*Id.*)

Therefore, the Court finds that Section 5 unambiguously precludes coverage for damage occurring over a period of weeks, including damage occurring within the first 13 days.

### c. Reasonable Expectations

In their Response, Plaintiffs argue that the Court should strike language in Section 5 that disfavors their proposed interpretation under the reasonable expectations doctrine. (Doc. 21 at 11).

Under the reasonable expectations doctrine, terms to an agreement may be struck

when a party has "reason to believe" a signing party would not accept the term. *Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1050 (Ariz. Ct. App. 2005). Arizona courts look to seven factors to determine if a party had reason to believe a party would not accept a term. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 397 (Ariz. 1984). Evidence of reasons to believe can be shown by (1) "prior negotiations," or (2) it can be "inferred from the circumstances," (3) or "inferred from the fact that the term is bizarre or oppressive," or from (4) "the fact that it eviscerates the non-standard terms explicitly agreed to," (5) or "from the fact that it eliminates the dominant purpose of the transaction." *Id.* It is (6) required that provisions are drafted so that they "can be understood if the customer does attempt to check on his rights." *Harrington*, 119 P.3d at 1051 (quoting *Darner*, 682 P.2d at 399). Courts are also required to consider (7) "any other facts relevant to the issue of what [the party seeking to challenge validity of the agreement] reasonably expected in [the] contract." *Id.* (citing *Darner*, 682 P.2d at 398).

Plaintiffs' sole argument addresses factor seven. They argue that "[a] person untrained in insurance would expect damages, unless specifically excluded, were covered." (Doc. 21 at 11). They also state that if damages during the first 13 days were excluded, the Policy should have explicitly stated so.

The Court is unpersuaded. Plaintiffs believe they reasonably expected Safeco to pay for their Loss because Safeco did not explicitly state that damages during the first 13 days were excluded, in other words, Safeco failed to state that "if water flows for more than 14 days, all losses occurring prior to 14 days are excluded." (*See* Doc. 21 at 7). However, that language is not necessary when the language in the Policy unambiguously states that losses caused by "continuous or repeated seepage or leakage of water . . . which occurs *over a period of weeks*" are excluded from coverage. Thus, the Court finds that Plaintiffs have not established that the Policy violated their reasonable expectations.

**IV.  Declaratory Judgment**

Defendant also seeks summary judgment on Count I, a Declaratory Judgment Act claim. Plaintiffs request the Court declare that "damages due to water losses occurring

within the first thirteen (13) days are not excluded pursuant to the Policy." (Doc. 1 at ¶ 55). Having found that Section 5 unambiguously precludes coverage for damage occurring over a period of weeks, including damage occurring within the first 13 days, the Court is unable to grant Plaintiffs' requested judgment and so will also grant Defendant's Motion for Summary Judgment on Count I of the Complaint. (Doc. 18 at 2).

Defendant also requests the Court positively declare the parties' rights under the Policy. (Doc. 18 at 2 n.1). Citing *Connolly v. Great Basin*, Defendant argues that "[w]here there was a controversy as to the coverage of the insurance policy, the judgment should have positively declared what was adjudicated in favor of appellee." 423 P.2d 732, 736 (Ariz. Ct. App. 1967). *Connolly* involved an action under Arizona's Uniform Declaratory Judgments Act, not the Declaratory Judgment Act. *Id.* at 735. However, to the extent that Defendant requests the Court positively state its judgment, it will do so again.

Plaintiffs' home was insured by Safeco when it was impacted by water damage. The water damage was sustained sometime in September 2019 and reported to Safeco on October 23, 2019. Safeco denied coverage because the damage fell within an exclusion stating that losses caused by "continuous or repeated seepage or leakage of water or stream, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years" are not covered. Importantly, the parties agree that the water damage to the home occurred over a period of weeks. They disagree as to whether a claim can be made for the first 13 days for damage occurring over a period of weeks.

As discussed more fully above, the Section 5 exclusion unambiguously precludes coverage for Plaintiffs' water damage that continuously occurred over a period of weeks. Section 5's language includes damage occurring within the first 13 days, provided that the damage occurred continuously for 14 days or more.

Therefore, the Court reiterates its finding that the Section 5 exclusion barring coverage caused by "continuous or repeated seepage or leakage of water . . . which occurs over a period of weeks" excludes coverage for the first 13 days of a loss that spans over a period of weeks.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 18) is **granted**. The Clerk of Court shall kindly enter judgment in favor of Defendant and terminate this matter.

Dated this 5th day of August, 2021.

Honorable Diane J. Humetewa
United States District Judge